UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MOSAD ALMONTASER,

        Plaintiff,                        MEMORANDUM AND ORDER

     - against -                       13 CV 5621 (ILG) (VMS)

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

        Defendants.
----------------------------------------------------------x
GLASSER, United States District Judge:

      Plaintiff, a retired teacher formerly employed by the New York City Department of Education ("DOE"), brings this action against the DOE, his former Principal Fred Walsh ("Walsh"), and his former Assistant Principal Judith A. Willoughby ("Willoughby"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), 42 U.S.C. § 1981 ("§ 1981"), New York State Executive Law § 296 ("SHRL"), and New York City Administrative Code § 8-107 ("CHRL"). Plaintiff claims that he was subjected to discrimination, a hostile work environment, and retaliation on the basis of his race, national origin, religion, and age. Currently before the court is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is GRANTED.

## BACKGROUND

I.    Facts & Procedural History

      Except where otherwise noted, the following facts are taken from Plaintiff's complaint, Dkt. No. 1. (the "Complaint"), and are accepted as true for purposes of

1

deciding this motion. Plaintiff is 61 years old and of Yemeni national origin. He considers himself to be an Arab-American and of the Muslim religion. Plaintiff was employed by the DOE for ten years as a paraprofessional and as a teacher for approximately fourteen years, before retiring at the end of June 2012. For the last twelve years of his employment, he was a Special Education teacher at the School for International Studies ("SFIS") in Brooklyn, New York. At all times relevant to this action, plaintiff was supervised by Walsh and Willoughby.

SFIS and the surrounding neighborhood have a sizeable Arab-American population. Plaintiff describes a number of incidents that he claims show that the administration, including Walsh and Willoughby, sought to discourage Arab-American students from attending SFIS and condoned anti-Arab-American statements. For example, a teacher remarked that he did not permit Arab-American students to use the computer because "they will learn how to make bombs." In October 2010, a teacher told students "if you know where Osama Bin Laden is, I will pay you money," but Walsh took no action. On one occasion, Walsh told two Arab-American students that, if they said that plaintiff helped them with the answers on an exam, they would graduate. And on another occasion, Walsh threatened to suspend students wearing yellow armbands in protest of the bombing of Gaza in 2009. Plaintiff alleges that many Arab-American students withdrew from SFIS as a result of such incidents.

Plaintiff also describes incidents that he claims show the administration's animus toward older teachers. For example, in 2011 Walsh asked a visiting former student "how do you like the old people teaching?" And on May 25, 2011, during a post-observation conference, Walsh told plaintiff "you are too old, out of the teaching loop, and not keeping up with the evolution of the teaching profession." In addition, Walsh and

2

Willoughby "frequently" made remarks to plaintiff such as "when are you going to retire?" and "you're too old."

Plaintiff alleges that Walsh and Willoughby harassed him and created a hostile work environment through informal and formal observations and evaluations and letters to his file.  On December 23, 2010, plaintiff received an observation report dated October 29, 2010, in which Willoughby rated plaintiff's performance "unsatisfactory" based on a 5-minute unannounced visit to his classroom.  Plaintiff received "unsatisfactory" ratings on several subsequent observations: on April 14, 2011 based on a formal observation by Walsh; in May 2011 in an observation report by Walsh; and on November 17, 2011 based an informal observation by Willoughby.  In his annual performance review in June of 2011, Walsh gave plaintiff an overall "unsatisfactory" rating and Willoughby rated plaintiff "unsatisfactory" in fifteen rating categories.

Beginning on October 21, 2011, plaintiff was required to submit weekly lesson plans to Willoughby by 8:37 a.m. on the first day of each week.  Plaintiff was threatened with disciplinary action if he did not comply.  Plaintiff protested this policy in a letter dated October 26, 2011, stating that it was "offensive, vindictive and unreasonable," that he was being "falsely accused of dereliction of duty," and that Willoughby was "using [her] supervisory position to intimidate and harass" plaintiff.  In response, Willoughby issued a letter to plaintiff's personnel file file stating that plaintiff was being "unprofessional" and "insubordinate."  On November 16, 2011, Willoughby issued a letter to file stating that plaintiff was not submitting weekly lesson plans.  Willoughby met with plaintiff on November 21 and December 1, 2011 regarding his failure to submit lesson plans and threatened plaintiff with disciplinary action.  In a letter dated January 24, 2012, Willoughby provided plaintiff an "Action Plan for improvement in your

classroom," which covered four categories: instruction, creating and maintaining a positive learning environment, lesson planning and preparation, and professional responsibilities.

On November 2, 2011, Cyrus McGoldrick, Civil Rights Manager with the Council on American Islamic Relations, wrote a letter to Walsh regarding the alleged anti-Arab attitude displayed by the SFIS administration and plaintiff's treatment. The DOE investigated these allegations and, in a letter dated March 16, 2012, found Mr. McGoldrick's allegations to be unsubstantiated.

At the end of June, 2012, plaintiff retired.[1] On or about April 16, 2013, plaintiff filed a written charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging the same discriminatory conduct as in this action. EEOC Charge No. 520-2013-01797. On July 22, 2013, the EEOC issued plaintiff a Notice of Right to Sue. Plaintiff served a notice of claim on defendants on or about April 16, 2013 and June 11, 2013.

Plaintiff initiated this action by filing the Complaint in this Court on October 11, 2013. Dkt. No. 1. Defendants filed their motion to dismiss the Complaint on February 25, 2014. Dkt. No. 8. Plaintiff filed his opposition on May 12, 2014. Dkt. No. 12. Defendants filed their reply on May 27, 2014. Dkt. No. 13.

II.     Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] Nowhere in the Complaint does plaintiff specify the precise date of his retirement.

4

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" by the plaintiff will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, on a motion to dismiss for failure to state a claim, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## DISCUSSION

I.  Title VII and the ADEA[2]

---

[2] The Court notes at the outset that individuals are not subject to liability under either Title VII or the ADEA, and plaintiff's Title VII and ADEA claims against Walsh and Willoughby could be dismissed on

5

Plaintiff first claims he was discriminated against on the basis of his race, national origin, religion, and age in violation of Title VII and the ADEA. In order to establish a prima facie case of employment discrimination under Title VII or the ADEA, a plaintiff must demonstrate (1) membership in a protected group; (2) that he or she was qualified for the position at issue; (3) that he or she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See, e.g., Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (ADEA); Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (Title VII). Although a plaintiff is not required to make out a prima facie case at the pleading stage, "[a] complaint must nevertheless allege the essential elements of an employment discrimination claim . . . ." Mabry v. Neighborhood Defender Serv., 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) (quotations and citations omitted). Accordingly, a complaint that fails to allege that the plaintiff suffered a specific adverse employment action must be dismissed for failure to state a claim. See, e.g., Malcolm v. Honeoye Falls Lima Cent. Sch. Dist., 483 F.App'x 660, 662 (2d Cir. 2012); Grant v. N.Y State Office for People with Developmental Disabilities, No. 12-cv-4729, 2013 WL 3973168, at *6–7 (E.D.N.Y. July 30, 2013); Mabry, 769 F. Supp. 2d at 392–394.

An adverse employment action is a "materially adverse change in the terms and conditions of employment." Galbaya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quotation omitted). "To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (quotations and citations omitted). Plaintiff alleges that his

---

this ground alone. See, e.g., Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011) (ADEA); Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (Title VII).

retirement is an actionable adverse employment action, because it occurred under circumstances constituting a constructive discharge.

Constructive discharge represents "harassment ratcheted up to the breaking point." Pennsylvania State Police v. Suders, 542 U.S. 129, 147–48 (2004). "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." Terry v. Ashcroft, 336 F.3d 128, 151–52 (2d Cir. 2003). "[W]hether the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation . . . is assessed objectively by reference to a reasonable person in the employee's position." Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004); Terry, 336 F.3d at 152.

The allegations in the Complaint simply do not rise to this level. In the first place, plaintiff's allegations primarily involve negative performance evaluations. But constructive discharge cannot be established merely by allegations that the "employee feels that the quality of his work has been unfairly criticized." See Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360–61 (2d Cir. 1993). In addition, the vast majority of plaintiff's allegations do not relate to the period leading up to his retirement. See Stokes v. City of Mt. Vernon, N.Y., No. 11 CV 7675, 2012 WL 3536461, at *7 (S.D.N.Y. Aug. 14, 2012) (citing Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000)). Plaintiff only alleges four instances in which he received "unsatisfactory" ratings following classroom observation, and three of them occurred during the 2010–2011 school year—well more than a year before his retirement. Similarly, his "unsatisfactory" rating in an annual performance review occurred in June of 2011, a year before his retirement. Plaintiff also alleges that he was given a "ridiculously onerous"

7

schedule, Compl. ¶ 58, but again this was during the 2010–2011 school year, not during the year leading up to his alleged constructive discharge.

The allegedly "intolerable" working conditions during the 2011–2012 school year consist principally of three things: one negative evaluation following an observation on November 17, 2011; Willoughby requiring plaintiff to submit weekly lesson plans in advance in the fall of 2011; and the "Action Plan for improvement in your classroom" plaintiff received in January of 2012. The Complaint is devoid of any allegations whatsoever regarding working conditions from February of 2012 until plaintiff retired at the end of June 2012. When viewed as a whole, plaintiff's allegations describe working conditions that may well have been "difficult or unpleasant," but that is insufficient to establish constructive discharge. See Stetson, 995 F.3d at 360. Because plaintiff's allegations do not rise to the level of constructive discharge, the Complaint fails to allege that plaintiff suffered an adverse employment action and plaintiff's Title VII and ADEA claims must therefore be dismissed.

In his opposition, plaintiff argues that the Court should consider incidents that occurred prior to his retirement, which he claims also constitute adverse employment actions. But these claims are untimely. In New York, claims under Title VII and the ADEA are subject to a 300-day statute of limitations—claims that accrued more than 300 days before the filing of a charge with the EEOC are time-barred. See, e.g., Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996) (Title VII); Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 328–29 (2d Cir. 1999) (ADEA). Plaintiff filed his charge of discrimination with the EEOC on April 16, 2013. Compl. ¶ 8. Accordingly, plaintiff's Title VII and ADEA claims based on incidents occurring prior to June 20, 2012 are time-barred.

Plaintiff nevertheless asserts that his claims based on earlier incidents are timely under the "continuing violation" exception to the 300-day limit. "Under the exception, a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations." Lightfoot v. Union-Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) (citation omitted). But to invoke the continuing violation exception, there must have been an actionable adverse employment action within the limitations period. Because plaintiff's retirement—the sole incident alleged to have occurred within the limitations period—did not constitute a constructive discharge, the continuing violation exception is inapplicable.

Plaintiff could not establish a continuing violation in any event, because the Complaint only contains conclusory allegations of a discriminatory policy or practice. See, e.g., Jones v. Onondaga Cnty. Res. Recovery Agency, 973 F. Supp. 2d 159, 167 (N.D.N.Y. 2013). Moreover, negative performance evaluations are considered discrete acts. See, e.g., Valtchev v. City of New York, 400 F. App'x 586, 589 (2d Cir. 2010); Sotomayor v. City of New York, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012); Siddiqi v. N.Y.C. Health & Hosps. Corp., 572 F. Supp. 2d 353, 366 (S.D.N.Y. 2008). And it is well established that discrete discriminatory acts are not subject to the continuing violation exception. See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Chin v. Port Auth. of N.Y & N.J., 685 F.3d 135 (2d Cir. 2012); Thomas v. N.Y.C. Dep't of Educ., No. 10-cv-4643, 2013 WL 1346258 (E.D.N.Y. March 29, 2013).

II. § 1981

Plaintiff also asserts claims of racial discrimination under § 1981, which provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 prohibits discrimination on the basis of race "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004). Discrimination claims under § 1981 are analyzed under the same substantive standards that are used to evaluate Title VII claims. See, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000).

The Court has already concluded that plaintiff has not alleged sufficient facts to support a plausible inference that he suffered a constructive discharge. But Title VII's 300-day statute of limitations does not apply to § 1981, see, e.g., Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004), and accordingly the Court may consider plaintiff's claims related to his negative performance evaluations. It is well established that negative evaluations alone do not constitute adverse employment actions "absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss." Browne v. City Univ. of N.Y., 419 F. Supp. 2d 315, 333–34 (E.D.N.Y. 2005). Plaintiff has not alleged that the evaluations had any such effect on his employment. Accordingly, his allegations of negative performance evaluations are insufficient to state a claim under § 1981. See Solomon v. Southampton Union Free Sch. Dist., No. 08-CV-4822, 2011 WL 3877078, at *9 (E.D.N.Y. Sept. 1, 2011) ("Although a negative evaluation may constitute an adverse employment action in some circumstances, . . . here plaintiff has failed to provide any evidence that her negative

10

evaluation affected her employment in any way, and therefore it is not an adverse employment action.").

Plaintiff does allege, however, that in connection with his negative evaluations he was required to submit his lesson plans to Willoughby at the start of each week and was provided with a performance improvement "Action Plan." Courts in other circuits that have addressed such reporting requirements and improvement plans are divided as to whether they constitute adverse employment actions. Compare Smith v. Quintiles Transnat'l Corp., 509 F. Supp. 2d 1193, 1203 (M.D. Fla. 2007) (finding adverse employment action where performance improvement plan "resulted in an increased workload, increased reporting requirements, and increased supervision . . . [and] temporarily prevented the Plaintiff from receiving pay raises or bonuses"), with Pauling v. Gates, No. 10-cv-1196, 2011 WL 1790137, at *7 (E.D. Va. May 6, 2011) (finding no adverse employment action where employer imposed additional reporting requirements as a result of plaintiff's "well-documented poor performance" and plaintiff did not allege any harm resulting from those requirements).

Even assuming that these requirements constituted an adverse employment action and not a "mere inconvenience," Galbaya, 202 F.3d at 640, plaintiff still fails to state a claim because the factual allegations in the complaint do not raise a plausible inference of discrimination. The only allegations relevant to racial discrimination involve a handful of instances in which SFIS employees either made or condoned anti-Arab statements directed at SFIS students. In the first place, none of these statements were directed at plaintiff. Moreover, this conduct is alleged to have occurred in 2009 and 2010, well before Willoughby imposed additional reporting requirements on plaintiff. "Statements made long before and not in the context of the adverse action

11

cannot support a claim of discriminatory motive for that action." Smith v. Revival Home Health Care, Inc., No. 97-cv-4415, 2000 WL 335747, at *4 (E.D.N.Y. Mar. 28, 2000).

Nor can plaintiff establish an inference of discrimination through allegations of disparate treatment. He does not identify a similarly-situated comparator who was treated more favorably but alleges only that older, non-Caucasian teachers were treated poorly. See Thomson v. New York City, No. 12 Civ. 8034, 2013 WL 6409326, at *8 (S.D.N.Y. Dec. 9, 2013). And in any event, these allegations are wholly conclusory and therefore insufficient to raise an inference of discrimination. See, e.g., Vega v. Hempstead Union Free Sch. Dist., No. 12-cv-6158, 2014 WL 2157536, at *5 (E.D.N.Y. May 22, 2014). Accordingly, plaintiff's claims under § 1981 are dismissed.

III.     Hostile Work Environment

Plaintiff next alleges that he was subject to a hostile work environment in violation of Title VII and the ADEA. The 300-day statute of limitations for Title VII and the ADEA does not apply to hostile work environment claims. "Hostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 115.

To state a hostile work environment claim, a plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The misconduct "must be severe or pervasive enough to create an objectively hostile or abusive work environment,

12

and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quotation omitted). The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. N.Y.C. Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989) (citation omitted). However, a single act can create a hostile work environment if it in fact works a "transformation of the plaintiff's workplace." Alfano, 294 F.3d at 374 (citations omitted). "To decide whether [this] threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Id. (citation omitted).

Plaintiff alleges that he was subject to a hostile work environment based on both his race and his age. "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quotations and citations omitted). The Complaint contains no such allegations. It recounts four incidents involving Arab-American students—one in 2009, one in 2010, and two that occurred at unspecified dates. Even on a generous reading of the Complaint, the offensive incidents were clearly—and only—isolated, not pervasive. And in any event, none of these incidents involved conduct directed at plaintiff. Plaintiff's allegation that this hostility was extended to him is wholly conclusory and lacks any factual support whatsoever. See Forgione v. City of New York, No. 11-cv-5248, 2012 WL 4049832, at *7 (E.D.N.Y. Sept. 13, 2012). Accordingly, the Complaint fails to state a hostile work environment claim under Title VII.

13

With respect to plaintiff's age, the Complaint only alleges two specific incidents—a statement made to a former student in 2011, and a statement made to plaintiff in May of 2011 following an observation and evaluation. More generally, plaintiff also alleges that Walsh and Willoughby "frequently" told plaintiff "[y]ou're too old" and asked when he was going to retire. These allegations are insufficient to state a claim of hostile work environment based on plaintiff's age.

In the first place, these remarks are not sufficiently severe to satisfy the objective prong of the hostile work environment analysis. Neither Title VII nor the ADEA "set[s] forth a general civility code for the American workplace." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation omitted). Accordingly, actionable age-based hostile work environments generally consist of more blatantly offensive and egregious conduct than that alleged here, see, e.g., Thomas v. N.Y.C. Dep't of Educ., 938 F. Supp. 2d 334, 357–58 (E.D.N.Y. 2013), or conduct occurring over a much longer period of time, see, e.g., Pierce v. Gareb Shamus Enters., Inc., No. 09-cv-1564, 2013 WL 1344963, at *8–9 (E.D.N.Y. Mar. 29, 2013). But relatively innocuous remarks, such as those at issue here, are insufficient to establish a hostile work environment. See, e.g., Aiello v. Stamford Hosp., No. 09-cv-1161, 2011 WL 3439459, at *25–26 (D. Conn. Aug. 8, 2011) (finding no hostile work environment where plaintiff was repeatedly called "old man" and was also the subject of offensive graffiti).

In addition, Plaintiff's allegation that these remarks were "frequent" is simply too vague, because the precise frequency of such comments is of great importance in analyzing a hostile work environment claim. Disparaging comments made daily clearly constitute an actionable hostile work environment. See, e.g., Vazquez v. Southside United Housing Dev. Fund Corp., No. 06-cv-5997, 2009 WL 2596490, at *14 (E.D.N.Y.

14

Aug. 21, 2009) (finding hostile work environment where plaintiff was harassed "almost every day" with offensive age-related comments). But comments made only weekly may not. See, e.g., McGrath v. Thompson Reuters, No. 10-cv-4944, 2012 WL 2119112, at *15 (S.D.N.Y. Apr. 30, 2012), adopted 2012 WL 2122325 (S.D.N.Y. June 12, 2012), aff'd 537 F. App'x 1 (2d Cir. 2013); Aiello, 2011 WL 3439459, at *26 (finding no hostile work environment where, among other things, plaintiff was called "old man" several times a week). Without more specificity, the Court cannot conclude that plaintiff's work environment was objectively hostile. And in any event, plaintiff alleges no facts to support his wholly conclusory allegation that these incidents "affected the terms and conditions of his employment"—an essential element of a hostile work environment claim. For all of these reasons, plaintiff's hostile work environment claims are dismissed.

IV. Retaliation

Plaintiff next asserts retaliation claims under Title VII and the ADEA. To state a claim for retaliation, a plaintiff must show that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). An employee may engage in "protected activity" by filing formal discrimination charges or by "oppos[ing]" any practice made unlawful by Title VII or the ADEA, see 42 U.S.C. 2000e-3(a), which includes informal protests such as making complaints to management, see, e.g., Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

It is unclear what "protected activity" plaintiff engaged in. Nowhere in the Complaint does plaintiff specify the protected activity that led to retaliation and reprisal,

and indeed the only reference to "protected activity" in the Complaint's factual allegations discusses plaintiff's filing of a notice of claim with the EEOC. See Compl. ¶ 14. But it is self-evident that this cannot satisfy the "protected activity" element of this claim—plaintiff filed his notice of claim after he had already retired. Id. ¶ 8.

Plaintiff does, however, allege that he wrote a letter to Willoughby on October 26, 2011 complaining about his treatment. Compl. ¶ 49. But plaintiff complained about his treatment in general terms, deeming it "offensive, vindictive and unreasonable." Id. He does not allege that he complained that his treatment was discriminatory. This is insufficient to satisfy the first element of a retaliation claim. "In order for an employee's complaints to be a 'protected activity' they must relate to an alleged violation of Title VII, i.e., the complaints must relate to race or gender. Otherwise, any employee who is disgruntled or dissatisfied with any aspect of his or her employment would ultimately find relief in Title VII even when race or gender was not an issue." Taylor v. Family Residences & Essential Enters., Inc., No. 03-6122 (DRH), 2008 WL 268801, at *13 (E.D.N.Y. Jan. 30, 2008) (quotation and citation omitted). Plaintiff's retaliations claims are therefore dismissed.

V. Plaintiff's Remaining Claims

The Court may decline to exercise supplemental jurisdiction over state law claims if the Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). It is well-settled that "if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." Brzak v. United Nations, 597 F.3d 107, 113–14 (2d Cir. 2010) (quotation omitted). Plaintiff's SHRL and CHRL claims are therefore dismissed.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is hereby GRANTED and plaintiff's Complaint is dismissed without prejudice to the filing of an amended complaint within 30 days.

SO ORDERED.

Dated: Brooklyn, New York
July 8, 2014

/s/
I. Leo Glasser
Senior United States District Judge